DEMOCRATIC CENTRAL COMMITTEE OF the DISTRICT OF COLUMBIA, et al., Petitioners,

v.

The WASHINGTON METROPOLITAN AREA TRANSIT COMMISSION, Respondent,

D.C. Transit System, Inc., Intervenor.

Nos. 21865, 24398, 24415 and 24428.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 1, 1993.

Decided March 30, 1993.

See also 988 F.2d 1239.

Leonard N. Bebchick, with whom Raymond Sczudlo, Washington, DC, was on the motions to effectuate subordination and for the deposit of rentals for Security Trust Co., N.A. as escrow agent/depositary, for the account of the Washington Metropolitan Area Riders' Fund.

Harvey M. Spear, New York City, was on the opposition to the motions to effectuate subordination and for the deposit of rentals, for D.C. Transit System, Inc., intervenor in Nos. 21865, 24398, 24415 and 24428.

Landon G. Dowdey, Washington, DC, for Democratic Central Committee of the District of Columbia, et al., petitioners in Nos. 21865 and 24398.

Gilbert Hahn, Jr., Washington, DC, for Black United Front, et al., petitioners in No. 24428.

Lutz Alexander Prager, Deputy Asst. Corp. Counsel, Washington, DC, for District of Columbia, petitioner in No. 24415.

O. Roy Chalk, pro se.

Before: BUCKLEY and RANDOLPH, Circuit Judges, and MacKINNON, Senior Circuit Judge.

Opinion for the Court filed PER CURIAM.

On Motions to Effectuate Subordination and for Deposit of Rentals

**PER CURIAM:**

D.C. Transit System, Inc. ("Transit") notifies the court that O. Roy Chalk and Claire Chalk have executed an "Amended Subordination Agreement" covering Lot 47 of the Car Barn Property, in which the Chalks have no interest, as a substitute for the Subordination Agreement covering Lot 840, which covers the adjacent parking lot. We determine that the Amended Subordination Agreement is illegal and invalid and that the existing Subordination Agreements are valid and need not be reformed as requested by the motion of the Security Trust Company, N.A. (the "Trust Company") of October 20, 1992. We also deny the motion of the Trust Company for an order requiring the rental payments of the Brookland Garage to be deposited in court.

### THE SUBORDINATION AGREEMENT

On June 5, 1992 this court issued an order requiring O. Roy Chalk and Claire Chalk, his wife, to comply with an agreement made with the court, in open court by their counsel Mr. Harvey M. Spear that they would

subordinate to the claims of the Riders' Fund any and all liens filed after July 2, 1990, they may have or claim upon the Car Barn Property, 3600 M Street, Northwest, Washington, D.C., which Mr. Spear represented as totalling $1,835,-112.00 and upon the Brookland Garage, 900 Michigan Avenue, Northeast, Washington, D.C., which Mr. Spear represented as totalling $937,215.00.

Order of June 5, 1992. These liens were evidenced by Deeds of Trust from D.C. Transit System, Inc., 3600 Incorporated, (Transit) to Claire Chalk, Trustee. The Deeds of Trust encumbering the "Car Barn Property" described two contiguous parcels: Lot 47, upon which the Car Barn Building was situated, and Lot 840, which was used as a parking lot for the building.

On June 8, 1992, Lot 47 was sold at auction in a foreclosure sale to Lutheran Brotherhood in satisfaction of a preexisting

obligation to the Brotherhood.[1] Thereafter, on July 2, 1992, Mr. and Mrs. Chalk filed with the Recorder of Deeds two "Subordination Agreements." One covered Lot 840, the parking lot part of the "Car Barn Property," and the other covered the Brookland Garage. Each Subordination Agreement attested to their agreement to "subordinate to the claims of the Riders' Fund ... any and all claims [liens] they [the Chalks] have for funds loaned to D.C. Transit System, Inc.," after July 2, 1990, in the amounts previously represented by Mr. Spear. The Subordination Agreement in its description of the realty comprising the covered "Car Barn Property" referred only to the property designated as Lot 840 which comprised the parking lot. No subordination agreement was submitted for Lot 47 upon which the Car Barn was situated, the property having been lost at the foreclosure sale on June 8, 1992.

Five and a half months later on December 17, 1992 Mr. and Mrs. Chalk submitted an Amended Subordination Agreement for filing which, they advised the court, was intended to correct an error in their July 2, 1992 Subordination Agreement. The proposed amendment to the Subordination Agreement would substitute Lot 47 for Lot 840, which Mr. Chalk contends is not part of the "Car Barn Property" and, therefore, not subject to the subordination order of the court. Lot 47 is the property upon which the Car Barn itself is situated and the Chalks' interest in that property had been lost six months previously by the foreclosure sale to the Lutheran Brotherhood. Thus, the substitution proposed by the Chalks would purport to replace a lien upon a property that was no longer owned by D.C. Transit and would remove Lot 840 (the parking lot property) from the Subordination Agreement, which all parties had considered as being within the "Car Barn Property" when the Subordination Agreement was executed, delivered, accepted, and filed with the Recorder of Deeds in July. Moreover, the Chalks could not legally have included Lot 47 when the subordination was executed on July 2, 1992 because they had lost any interest in it on June 8, 1992 when it was sold at the foreclosure sale. Thus, the filing of the Amended Subordination Agreement by the Chalks was a bald attempt to extinguish any subordination involving the Car Barn Property.

The Chalks now contend that Lot 840 being a parking lot contiguous to the Car Barn is not part of "the Car Barn Property." However, the Chalks on July 2, 1992 interpreted the term "Car Barn Property" as including Lot 840 when they drafted the Subordination Agreement and the court accepted the subordination of Lot 840 with that understanding. The amendment proposed by the Chalks now would basically substitute nothing for something. Our Order of June 5, 1992 required subordination of "any and all liens filed after July 2, 1990" on the "Car Barn Property." While it is true that the Deed of Trust involving the Lutheran Brotherhood encumbered only Lot 47, a title search by the First American Title Insurance Company, filed with this court last spring, confirmed that the three Deeds of Trust listed in the original Subordination Agreement for the "Car Barn Property" encumbered *both* Lot 47 and Lot 840, whose metes and bounds are set forth under the heading "DESCRIPTION OF *THE* PROPERTY." (Emphasis added.) It appears, then, that the term "Car Barn Property" was generally interpreted as encompassing the two contiguous lots upon which the Car Barn and the parking lot are located. The caption at the top of the document subordinating Lot 840 provides "Re: Car Barn Property, 3600 M Street, Northwest, Washington, D.C." Thus, on the date of our Order, the liens that were to be subordinated encumbered both lots and it is clear that our Order calling for subordination of liens on the "Car Barn Property" was intended to cover both lots.

The proposed Amended Subordination Agreement of December 17, 1992 is

---

1. The principal amount of the encumbrance was for $12,500,000.00 and was dated April 8, 1988.

therefore determined to be null and void and of no legal effect. This will leave in effect the July 2, 1992 Subordination Agreement on Lot 840. While it covers only Lot 840, the Lutheran Brotherhood having foreclosed on Lot 47, we find that the Agreement sufficiently implements our Order of June 5, 1992 and that the Chalks had no authority to alter it.

### BROOKLAND GARAGE RENTAL PAYMENT

D.C. Transit has leased the Brookland Garage and is currently receiving rental payments pursuant to the lease. Security Trust Company, N.A., as agent for the Riders' Fund, moves for an order requiring the rental payments to be deposited with the court. The Trust Company also moves for an order requiring the Chalks to reform the Subordination Agreements to comply with the court's Order of June 5, 1992. Having ruled that the Subordination Agreements as filed are adequate we deny both motions.

■ Mr. Spear's representation with respect to the Subordination Agreements was made in the face of what the parties perceived to be the imminent foreclosure sale of Lot 47 upon which the Car Barn was situated. Counsel for Democratic Central Committee, the Black United Front and the District of Columbia were then complaining of the Chalks' practice of loaning money to D.C. Transit and then securing the loans with deeds of trust on various Transit properties without notifying the court, a practice claimed to violate the court's Order of April 24, 1979, requiring Transit to give notice of any "dispositions" of property. While the 1990 compromise agreement of the parties, and the court's orders approving it, including the Order of July 2, 1990, might have been thought to preclude any complaints about matters occurring before that date, questions still remained regarding liens placed on D.C. Transit property after July 2, 1990 and whether the imposition of the liens on Transit property after April 24, 1979 constituted a disposition of property. Mr. Spear's representation obviated the need to decide whether an encumbrance on property constituted a disposi-

tion of the property. Given this history, it is plain that by the Subordination Agreements the Riders' Fund was to be given priority only over liens placed by the Chalks on the two properties after July 2, 1990. It was not intended that the Riders' Fund would have priority over liens perfected before that time. The Subordination Agreements filed with the Recorder of Deeds on July 2, 1992 adequately reflect our understanding of the purpose of our Order of June 5, 1992.

The Chalks have informed the court that the rental payments Transit receives under the lease of the Brookland Garage, totalling some $40,000 monthly, are paid over to the Chalks as a result of Transit's default on the loans the Chalks made to it. In any event, Transit is not thereby giving priority to the Chalks' post-July liens and Chalks' receipt of the rental payments therefore is not inconsistent with the Subordination Agreements executed pursuant to our order of June 5, 1992. Transit is not discharging the post-July 2, 1990 liens by turning over the rents to the Chalks. With respect to liens before July 2, 1990, neither Mr. Spear's representation nor our order implementing it gives the Riders' Fund any priority over those prior liens.

### CONCLUSION

The Amended Subordination Agreement is declared to be null and void and of no effect and the motions by the Trust Company to order the reformation of the Subordination Agreements, and to require that rental payments on the Brookland Garage be paid into court, are denied.

*Judgment accordingly.*